Good morning. Good morning, Your Honors, and may it please the Court. My name is Mary Pat Berry. I am present on behalf of Defendant and Appellant, Santa Barbara County Sheriff's Office Senior Deputy Freddy Padilla. I plan to reserve about three minutes of my time. I'll try to help you, but if you know it goes very quickly. I will keep my eye on the clock. This appeal follows a jury verdict. Finding Deputy Padilla liable for excessive force. This appeal, therefore, asks this Court to reverse the District Court's denial of Deputy Padilla's post-trial motion for judgment as a matter of law on grounds of qualified immunity and sufficiency of the evidence, and in the alternative, his Rule 59 motion for a new trial. What's your best argument for qualified immunity? Normally, of course, we get these all the time, as you know, and we have White v. Pauley that's come down recently, but this case is a little unusual in that there's existing law for similar kinds of situations, and it gets down to a very fact-intensive analysis. You've got a kid carrying water balloons, of all things. You've got testimony from an earlier incident that this Detective Padilla is a detective or what his name is? Senior Deputy. Senior Deputy. Okay, we'll call him Deputy. Deputy. Deputy Padilla seems to have a tendency to like to rough it up with some of these college kids, apparently. So if you just look at the straight law, this is a pretty straightforward deal. The jury found the same. What would you point to in the facts that would suggest that in this case, a reasonable officer in a Deputy Padilla situation could not have known that what he was doing was unconstitutional? Your Honor, our position is that he would not have known and could not have known, and not every reasonable officer would have known, that what he did by taking Mr. Schaffer to the ground to place him under arrest would violate Mr. Schaffer's constitutional rights. Even given the fact that this was not under any danger? Nobody threatened Officer Padilla? Well, Your Honor, when you look at the context of what Deputy Padilla was addressing, first, I believe the environment is an important part of the analysis in this case. The environment is an incredibly crowded street in Isla Vista just after midnight in a college town on a Saturday night. Just after midnight, the testimony is the noise ordinance goes into effect and students are flooding out of parties. Deputy Padilla has received a report that individuals were hit by water balloons, and water balloons, as the record shows, in Isla Vista are a significant problem. What happens is a kid throws a water balloon at another kid or into a house or into a party. The person who gets hit gets upset. There's a lot of alcohol use, a lot of inebriated people on the street. That person comes out, looks for the person who hit him with the water balloon, and someone gets hurt. That's a great argument for why you want him to not carry the water balloons. I get that. What I'm asking for is what danger? Most of these qualified immunity cases deal with the fact that the officer feels threatened. He's going to get shot or seriously wounded or a companion is going to get wounded. Where's the evidence of anything like that in this case? The evidence in this case, Your Honor, is that Deputy Padilla has confronted Mr. Schaefer. Mr. Schaefer is defiant. He is not obeying any of Deputy Padilla's commands. So what that tells the law enforcement officers, I'm dealing with an individual who is not likely to comply with commands. Maybe walk-through time-wise, I thought this was a very quick bang, there you go. There wasn't a whole series of these things. He told him to put down the water balloons. He said, well, why? And then, bam, he's on him. Am I wrong? You're wrong, Your Honor. What the testimony was from Mr. Schaefer's friends, from Mr. Schaefer himself and from Deputy Padilla, is Deputy Padilla initially asked Mr. Schaefer, drop the water balloons, hand me the water balloons. Mr. Schaefer answered, why or why do I have to? Deputy Padilla asked again, I need you to drop the water balloons. Mr. Schaefer said, why? I don't want to. I don't have to. Deputy Padilla asked again, I need you to drop the water balloons. Mr. Schaefer again said, why? Why do I have to? Deputy Padilla then said, this is your last warning. I need you to drop the water balloons. And again, Mr. Schaefer says, why? I don't see why I have to. So it's three to four instances of Deputy Padilla, without touching Mr. Schaefer, simply commanding that he drop the water balloons, which can be used, as Deputy said, as a distractor, to be thrown at someone. But, again, we're talking about not the reason why they might want to get rid of the water balloons and the overall environment. We're talking about the threat to Deputy Padilla. In what way did the, you know, college students tend to mouth off. We all know that. It's common sense. And if he said, you know, why do I have to? You know, that's not very polite, but that's not a threat on Padilla's life. It's not a threat to injure him. So let's take your argument. You said he said it four times. That's not what I recall. But say he did. Four times pretty quickly then. And then he hits him, slams him down to the ground, arguably injures his arm. Is that, the jury obviously found that was excessive force. So what we're really talking about is whether the case law and a common understanding of the threat to him gave him qualified immunity. And I'm struggling, frankly, with how he gets qualified immunity in this situation. And, Your Honor, the facts are not that after the fourth refusal to obey Deputy Padilla, Deputy Padilla slams Mr. Schaefer to the ground. Those are not the facts. Okay. What happened? Deputy Padilla then grabs Mr. Schaefer by one arm using his hands. He says, and Deputy Padilla's intent is to get Mr. Schaefer out of the busy street where Deputy Padilla testified. It is a threatening environment for law enforcement. As you said, the kids mouth off. They collect in groups. They throw things at law enforcement. So his goal is to get Mr. Schaefer out of the street over to the curb where he can start investigating the suspected battery. He grabs him by the arm. Suspected battery? Using water balloons. That's what Deputy Padilla is doing. He's investigating a report of criminal activity. He wants to investigate whether Schaefer personally had used water balloons? Yes. Yes. Where's that on the record? It's in Deputy Padilla's testimony. Where? And in his probable cause declaration he says, I got a report from four individuals saying they've been hit with water balloons. And he wanted to know whether Schaefer had done that. Right. To investigate. And the jury find that he had probable cause? Yes. To do this? Yes. Probable cause to arrest? The jury find that he had probable cause to arrest, right? Yes. The jury also found, I mean, the only thing the jury didn't find in his behalf is that he used excessive force, right? Exactly, Your Honor. Every other part of the jury's verdict came out in his favor, right? Yes. Let me ask you a question, which I struggled with in making this determination. Once the jury's made a determination, do I have to give the plaintiff any benefit of the doubt as to the facts? You have to, on review, it's de novo review, and you have to view the facts in the light most favorable to the jury's verdict. We're not talking now about what the plaintiff would allege or what the plaintiff could allege, but as to the jury's determination, isn't that the deference I give? Yes, Your Honor. Which makes that a little bit different, if you will, idea. So, therefore, we can't really talk about whether he didn't have probable cause to arrest because the jury said they did. So everything that he might have done or might have happened up to this opportunity or up to this, if you will, takedown, the jury went with him. He had the probable cause to make this arrest. We're just suggesting at that point, is there any case law which would suggest that now the officer should have known what he was doing was against the Constitution? Exactly, Your Honor, and our position is that there is not. In fact, I cited to the cases that I believe, well, I should tell you, if you look at what the district court relied on, those cases do not apply to the facts in this case. In this case, the district court, there's a huge gap in the district court's analysis of the facts that it relies on in determining the clearly established element of the test for qualified immunity. What the court does is it misses the entire period of time that Judge Smith, you just mentioned, and you said, didn't he just get slammed to the ground after his fourth refusal to obey? No. Deputy Padilla grabs his arm, tries to move him to the sidewalk. As he's trying to move him to the sidewalk holding one arm, Mr. Schaefer is planting his feet and resisting, and that was the testimony of Mr. Schaefer's friends. As a result, Deputy Padilla and Mr. Schaefer start turning in circles, and they travel, estimated by different witnesses, between 10 and 25 feet out of the street, across the sidewalk, and up a driveway. The entire time they are spinning and turning, it looks like they're tripping over each other's feet. That's the testimony of all of the eyewitnesses. So Deputy Padilla knows he's dealing with not only a noncompliant to commands, but a physically resistive subject. In fact, when Deputy Padilla first grabbed Mr. Schaefer's arms, Mr. Schaefer tried to pull it away. His friends testified to that, and Mr. Schaefer's testimony was, oh, it's possible I did that. Tried to pull his arm away. So Deputy Padilla has- Is that a violation of the law? That is a violation of the law. So in other words, if you're standing there and somebody grabs you, isn't it just a normal human reaction to, you know, somebody grabs you? If you tried to slug him or something like that, it's different. But just the fact that somebody grabs him by the arm, I would think anybody would. You would. I would. And, Your Honor, what I think the review of the facts from the initial contact until Mr. Schaefer is taken to the ground is absolutely required under the qualifying immunity test. The Supreme Court keeps repeating for courts reviewing these qualifying immunities to look at the specific particularized content and context of the case. So when the district court in this case gave no attention to the grabbing of the arm, Mr. Schaefer trying to pull the arm away, and for law enforcement, whether Mr. Schaefer is doing an instinctive or not, if Deputy Padilla perceives it, having already had this person defiantly refuse to obey his four orders, if Deputy Padilla perceives it as something consistent with that level of resistance and defiance, then a law enforcement officer can make that assessment. So Deputy Padilla is starting to accumulate information as he tries to investigate the crime of battery. And that information is that Mr. Schaefer is not going to be compliant, and he's not going to be someone who Deputy Padilla can safely escort to the curb and do an interview with and then probably let go once he drops his water balloons. Do you want to save any of your time? Oh, I do, Your Honor. I know it goes quickly. So I just urge this court to take a look at what the district court did not review. A law enforcement officer can use a takedown, and that's all Deputy Padilla used, to effectuate an arrest. And in this case, he used that force to effectuate an arrest on an individual who was defiant and physically resisting him. If Schaefer, instead of having water balloons, was sticking out his tongue at everybody as he went by and Officer Padilla thought that was inappropriate, could he have done the same thing here? He said, I understand that you've been sticking your tongue out at people and it's making people mad. I don't think that with the environment those law enforcement officers work in on Isla Vista on a Saturday night, if Deputy Padilla had gotten a report from someone that an individual on the street was sticking their tongue out, he would not have pursued that investigation. All right. We'll look forward to hearing your rebuttal. Good morning, Your Honors. Good morning. Stephen B. Stevens for Mr. Oak. Excuse me, Mr. Schaefer. A lot has been transpired in the colloquy with counsel. One of the primary problems that the counsel was having in responding to the court's questions is that they're relying upon essentially Mr. Padilla's version of events, a version that the jury, for the most part, rejected. I don't know whether they reject. I mean, the jury found he had probable cause to arrest. The jury found he had probable cause to arrest perhaps for delaying the officer. The problem comes, counsel, and that's why I ask the question. What version of facts do I look at here? And it seems to me the normal case is for me to have this case before the jury gets a chance at it. This time the jury had a chance at it. The jury had a chance at it, and the jury said your client gave him the probable cause to arrest by his actions. Then the jury said the actual force he used was excessive. Yes.  Let me give the jury every bit of credit. What's the best case you've got, Supreme Court case, that says this is excessive force? Because my chief judge on the first day of another hearing, or my presiding judge on the first day of another hearing long before you said, White versus Pauley just barely came down. It's a new kind of case. It says we've got to have some specifics here. We cannot just go on the generalities. And when he said that, counsel kind of thought about it again. I'm saying it to you. What's the case? Well, Your Honor, I don't know if there's a Supreme Court case that deals with it on this side of the court. I don't think there's a Supreme Court case that deals with this particular instance. In fact, I look squarely at the four cases you used and the comparable amounts of force used by the officers. None of those cases involved an act of resistance. None of those cases involved a challenging environment. If I look at Meredith versus Erreth, if I look at Wall versus the City of Orange, if I look at Hanson v. Black, if I look at Blackburn, there's none of them that do that. In fact, that's why I worried about what you're really trying to tell me. Why don't you try to instead distinguish this case from Tatum versus City of San Francisco? Do you remember that case? I confess, Your Honor, I'm drawing a blank on it. Do you know Jackson versus the City of Bremerton? Again, the facts are escaping me. Do you know Santos versus Gates? I confess, Your Honor, the facts of the case are escaping me. I mean, my problem is that I tried to find something where this kind of thing was happening. And they're all Ninth Circuit cases. They're not Supreme Court cases. And they don't suggest that this officer would have known. For instance, let's just look at, I mean, Jackson versus the City of Bremerton. An officer did not use excessive force where officers who were substantially outnumbered by a group of people pushed the plaintiff to the ground, sprayed chemical irritant in the plaintiff's hair, and locked the plaintiff in a hot patrol car after she attempted to interfere with the arrest of her adult son. Well, in those facts, Your Honor, I would say this case is much different. We have a college student who was walking down the street carrying water balloons, which are not in themselves illegal. That's absolutely what the jury said. The crime was they were thrown at somebody else. He was investigating, absolutely investigating the battery, and he had probable cause to arrest. Well, Your Honor, we don't know what he was investigating because the actual – The jury thought it was okay. We don't know that, Your Honor, from the jury's verdict. He said that he was investigating a supposed battery, but in fact there was no record of any crime of that battery having occurred. He didn't take any witness statements. He didn't take any addresses, e-mails, telephone numbers. This was something that came up afterwards. He didn't say that to Mr. Schaefer when he approached him, and that's corroborated not only by Mr. Schaefer's friends but by the partner. The only thing I'm trying to get you to do is I can find a violation if the jury wants to find a violation because I have to give deference to the jury. After I get through with that, then I've got to find a Supreme Court case that is so on force that I am absolutely going to say the officer is down. The officer loses, and I couldn't find it. And the cases you cited didn't make it. So cite me a good case. Well, Your Honor, I think the cases that are cited here actually are comparable, as has been discussed. We're talking about something that, in fact, first of all, carrying balloons – But which of those four cases involved active resistance or a challenging environment? Your Honor, I don't think the environment here is all that relevant for this reason. The officers themselves did not feel that they were in jeopardy because they didn't tell other people around them, stay away from this man, he might be dangerous. They never perceived a threat to themselves. They never perceived a threat to other passersby. This was just an interaction on the sidewalk. No one perceived any threat. Let me ask you this, Counsel. According to the jury, Officer Padilla had probable cause for what? What had occurred that created the probable cause? Was it investigating the battery, or was it something that Mr. Schaefer allegedly did? Well, that's an interesting question because the jury questions – I think it is. I mean, what did he have probable cause for? Just a minute to answer the question. How could it have been a battery if the young man hadn't have been the one being investigated? I agree. He said he could not be arrested for battery. Absolutely. That's out. He had probable cause to arrest. How could that happen without the actions of the young man being a part of the investigation and giving him the probable cause? The only thing we can look at, based upon the evidence and what the jury found, was that the jury could have concluded – and there is some amount of speculation here – the jury could have concluded that taking four times to have him put down the water balloons could be construed as delay. And perhaps he was arrested for delay, and that was the probable cause. And that's under California Penal Code Section 148. Yes. The standards are delay, obstructing, or resisting. The evidence… The jury obviously found that there was probable cause for the officer to believe that Schaefer violated Section 148. Right. One of those three, yes. But then it went on to find that the manner of the arrest – so the fact of the seizure is okay, the manner of the seizure is unconstitutional. Yes. Okay. With respect to that point, I think that – let me suggest that perhaps our factual predicate would be the facts in the light most favorable to Schaefer, with respect to the excessive force. So my question for you is, where in the record was there any testimony, any affirmative testimony that Schaefer did not resist Padilla once Padilla grabbed Schaefer? Oh, there's quite a bit of it, Your Honor. Schaefer's colleagues describe that Padilla lashed out at Schaefer, eventually grabbing his arms, forcing the water balloons from his hands, and forcing him to drop them. Now, Padilla said his goal was to get the water balloons out of his hands. Once they were dropped, why continue the attack? Was there any – well, he could have arrested him for violating 148. So was there any witness who testified that Schaefer did not try to remove his arm or his hand or his wrist from Padilla's grasp? Yes, Your Honor. As a matter of fact, Mr. Flint said that the defendant was in complete control. Mr. Flint said that Schaefer never lifted his hands to the defendant. That's in the supplemental excerpt of record at pages 79 and 80. But that's not saying that Schaefer didn't try to break free. It said that Schaefer didn't try to break free by lifting his hand in the air. Right. He could have moved his arm sideways or down. Well, that's true, but the testimony from Padilla, which the jury apparently rejected, was that Mr. Schaefer lifted his arm and tried to break away. So if that is the allegation from Padilla, a witness directly refutes that. Additionally, the defense expert also agreed, and the independent precipitating witnesses agreed, that Mr. Schaefer was not resisting arrest. He was resisting injury to himself. He was suddenly attacked and being twisted around, and he's trying to maintain his balance. It is a natural instinctive reaction, which Mr. Padilla should have been aware of as well, that people suddenly attacked are going to brace themselves to avoid injury to themselves. The defense expert even made the same point. He didn't think that trying to keep your balance and avoiding injury was resisting arrest. And additionally, the probable cause declaration did not say that resisting arrest was the grounds for arrest. The probable cause declaration referred to how Mr. Schaefer supposedly would not surrender the water balloons. So it's not really clear at all that Mr. Padilla was arresting for resisting arrest. In fact, he never even said he was. Could you please clarify that, please? You said that the probable cause was because Mr. Schaefer refused to surrender the balloons? Or is that in the record? If you give me a moment, Your Honor, I think I can point to the record. In the probable cause declaration. Where is that in the record, please? I believe that is Exhibit 13. Okay, but. I believe, Your Honor. I don't have it right in front of me. S-E-R-E-R, what is it? Oh, I'm sorry. 3-E-R-3-O-7. 3-E-R-4-O-7? 3. 3-E-R-3-O-7, Your Honor. And I apologize. I don't have the document right in front of me. But I believe that the probable cause declaration referred to how Mr. Padilla. I'm sorry, that Mr. Schaefer was unwilling to throw down or put down the water balloons. As a matter of fact, the evidence is pretty clear that nothing was said about an arrest until after the tackle. Why was Schaefer so attached to those water balloons? I'm trying to reach back to when I was in college, Your Honor. And I don't remember throwing water balloons at anybody myself. Although I was hit by a couple from time to time. Wasn't the right thing to do when an officer says drop the water balloons? You drop the water balloons? Yes. Hindsight being 20-20. Yeah, he probably should have. But Mr. Padilla, he openly said in court. I mean, when I read the transcript, I was kind of startled by this. He says he views questions to him as challenges. He views questions to him as defiance. Why can't I have water balloons? Okay. Son, here's the problem. If you throw them at someone, someone's going to get angry and a fight could break out and that could be hurt. Someone could be hurt. That's counseling someone to put down the water balloons and don't do what you're thinking of doing. That's not the same thing as saying, you know, you threw some water balloons. I've got this report from anonymous people that they were hit by water balloons, and I'm going to force you to give them down. And even after you drop them, I'm still going to continue my attack and then arrest you for a violation of PC 148. And he actually didn't say he was going to arrest them until after the tackle was completed. I want to ask you a question about the relative provocation, if you will. I'm going to read just something from Bryan v. McPherson, which is one of our cases of 2010. We said, while the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others. I had asked your opposing counsel a question about what was the threat against Officer Padilla. I believe her answer was it wasn't him. It was the threat that the water balloons posed to other people. Would you comment on what role, if any, the fact we're talking about water balloons and no threat to Padilla personally should play in our deliberation? I think the fact that there was no threat to Padilla or to anybody else at that very moment plays into your deliberations that there was no basis for any force at all because there was no immediate threat. He wasn't going to throw their water balloons at some passerby right in front of the police officer. He wasn't going to throw them at Deputy Padilla or in front of his partner. What should he have done? What should Padilla have done? Said to him, I see you have water balloons. I understand you're probably going to throw them. Son, this is not the thing to do. People could get hurt. People could get angry. He wants to stop him from doing it, so what does he do? What's the practical fact here? If he's not going to touch him, what's he going to do? Use his age and wisdom and authority as a police officer to explain to him. Police like to listen to that, don't they? Well, you know what? Well, it can work because Mr. Schaeffer's friend complied with that demand. So, yes, you actually can reason with college students. It is possible to do so. Middlebury? Even in Middlebury? I'm not sure. I went to Carleton, Your Honor, so I don't know what they do up in Middlebury. A Minnesota guy. Yes. Any other questions from my colleagues? All right, thank you very much, Counselor. Your time is up. Thank you very much, Your Honor. I don't hear argument rebuttal from counsel. Thank you, Your Honor. Just very briefly, some of that information you were just given just is not consistent with what is in the record. Deputy Padilla never testified that he treats questioning of him as challenging. Maybe I misunderstood. Was it how Padilla characterized what he said, or was it how Schaeffer characterized what Padilla said, that there was a challenge? Maybe I misunderstood him. I believe at trial Mr. Beck questioned Deputy Padilla about something that was said at his deposition. So it was Mr. Beck's words at his deposition saying, isn't it something about was it a challenge to your authority? And Deputy Padilla candidly answered yes. He never said, when students question me, I consider that a challenge to my authority. He did or did not say that? Did not. Deputy Padilla, in fact, said, you know, if this had been daylight and Isla Vista was not in its condition on a Saturday night at midnight, I would have had a conversation with Mr. Schaeffer. But in that environment, Deputy Padilla said, that is a threatening environment for law enforcement. His goal is to take action, get him out of the street. And in the record, you learn Santa Barbara Sheriff's Office and Santa Barbara University of California Police, they deal with the students by immediately get them out of the street, get them on the curb, get their legs crossed, get their hands in their lap. That way, if they're going to get up and run, they lose a second while they try to undo their cross legs and run. But I just, my time's up, but I urge you to look at Gregory v. County of Maui, the Tatum case. Those are consistent with what Deputy Padilla was having to deal with, someone who was noncompliant, was grabbed, was turning and twisting, and was taken to the ground. And I cited the Blazek v. City of Iowa City case, which is out of the 8th Circuit. But it's interesting because in that case, the 8th Circuit reviewed cases from the 3rd, the 4th, the 6th, and the 9th regarding what use of force could be used back in 2009, and concluded that a takedown in circumstances like this, a takedown, just taking someone to the ground to effectuate the handcuffing, is not in any way known to anyone to be clearly established to violate someone's rights. I think my colleague has a question here. It's a legal question. If there was no physical resistance, would Padilla still be entitled to qualified immunity? If there was no physical resistance? You know, case authority says that even someone who is passively resisting, force can be used against them, but it has to be looked at very carefully. So courts look at, of course, all of the facts and circumstances to determine if someone is not physically resisting, is there still cause to use some level of force? And, of course, to achieve an investigation and to achieve an arrest, Graham v. Connor says law enforcement can use some element of force. I don't believe that if someone is not resisting, that a takedown to the ground would be appropriate. I absolutely would tell you that. Any other questions by my colleague? Thank you both for your argument. We appreciate it. The case just argued is submitted, and the court stands in recess for the day.
judges: M. Smith, N.R. Smith, Feinerman